THACHER PROFFITT & WOOD LLP
50 Main Street
White Plains, New York  10606
Kevin J. Plunkett
Darius P. Chafizadeh
Andrew B. Zinman
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIOLETA DZIKOVIC, HATIXHA ZHERKA, KUJTIM ZHERKA, JOHN O'NEILL, GABRIEL POTENTE, MADLIN SULEIMAN, LANA MARJI, KENNETH HESLOP, RANDA SAYEGH, CHANDRA SOOKDEO, JONI CAMPBELL, YOLANDA COLLAZO, ROBERTO RODRIGUEZ, GUILLERMO CORSO, CHEZEKIA CORSO, ARACELIS BATISTA, ALICIA CORZO, MARIO MARTINEZ, ANGEL FELIZ, Sr., ANGEL FELIZ, Jr., DOMINICK D'INTINO, ROBERT PALERMO, SAL POTENTE, JAMES CAREY, VERONIKA DZIKOVIC and DEREK ROBERTO, | **ECF Case**<br><br>07 Civ. 7692 (CLB) |
| Plaintiffs, | |
| -against- | **DECLARATION OF ANDREW B. ZINMAN IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AS AND AGAINST DEFENDANT LAWRENCE A. PORCARI, JR.** |
| PHILIP AMICONE, individually, EDMUND HARTNETT, individually, JOHN A. LISZEWSKI, individually, LAWRENCE A. PORCARI, Jr., CITY OF YONKERS, New York, PAUL WOOD, individually, POLICE OFFICERS JOHN DOES #1 to #20, individually, and SANITATION WORKERS #1 to #20, individually, | |
| Defendants. | |

STATE OF NEW YORK          )
                                            ) ss.:
COUNTY OF WESTCHESTER  )

ANDREW B. ZINMAN, being duly sworn, states the following under penalty of

perjury:

1.      I am an associate with the law firm Thacher Proffitt & Wood LLP, attorneys for

Defendants in the above-entitled action, and duly admitted to practice law in this Court.

2.      I submit this declaration based upon information and belief, the source of which is a review of the documents that form the basis of this action.

3.      I submit this declaration solely to provide the Court with the following document and statutory authority which support Defendant Lawrence A. Porcari, Jr.'s ("Porcari") motion to dismiss the Complaint dated August 28, 2007 (the "Complaint") as and against him pursuant to Federal Rule of Civil Procedure 12(b)(6) upon the ground that the Complaint fails to state a cause of action upon which relief can be granted because Porcari is entitled to absolute and/or qualified immunity:

       a.      Annexed hereto as Exhibit **A** is a copy of the Complaint.

       b.      Annexed hereto as Exhibit **B** is a copy of the City of Yonkers Charter, Article XIII, Department of Law, which empowers the Office of the Corporation Counsel to, among other things, prosecute violations of the Yonkers City Code.

_____
       Andrew B. Zinman

Sworn to this 26th day of
September, 2007

_____
Notary Public

2

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

---------------------------------------------------------------------x

VIOLETA DZIKOVIC, HATIXHA ZHERKA, KUJTIM
ZHERKA, JOHN O'NEILL, GABRIEL POTENTE,
MADLIN SULEIMAN, LANA MARJI, KENNETH
HESLOP, RANDA SAYEGH, CHANDRA SOOKDEO,
JONI CAMPBELL, YOLANDA COLLAZO, ROBERTO
RODRIGUEZ, GUILLERMO CORSO, CHEZEKIA
CORSO, ARACELIS BATISTA, ALICIA CORZO,
MARIO MARTINEZ, ANGEL FELIZ, Sr., ANGEL
FELIZ, Jr., DOMINICK D'INTINO, ROBERT
PALERMO, SAL POTENTE, JAMES CAREY,
VERONIKA DZIKOVIC and DEREK ROBERTO,

**COMPLAINT**

Plaintiffs,

07 Civ.    (    )

-against-

# 07 CIV. 7692

PHILIP AMICONE, individually, EDMUND
HARTNETT, individually, JOHN A. LISZEWSKI,
Individually LAWRENCE A. PORCARI, Jr., CITY OF
YONKERS, New York, PAUL WOOD, individually,
POLICE OFFICERS JOHN DOE'S #1 to #20,
individually, and SANITATION WORKERS #1 to
#20, individually,

**JURY TRIAL
DEMANDED**

Defendants.

---------------------------------------------------------------------x

Plaintiffs VIOLETA DZIKOVIC, HATIXHA ZHERKA, KUJTIM ZHERKA,

JOHN O'NEILL, GABRIEL POTENTE, MADLIN SULEIMAN, LANA MARJI,

KENNETH HESLOP, RANDA SAYEGH, CHANDRA SOOKDEO, JONI

CAMPBELL, YOLANDA COLLAZO, ROBERTO RODRIGUEZ, GUILLERMO

CORSO, CHEZEKIA CORSO, ARACELIS BATISTA, ALICIA CORZO, MARIO

MARTINEZ, ANGEL FELIZ, Sr., ANGEL FELIZ, Jr., DOMINICK D'INTINO,

ROBERT PALERMO, SAL POTENTE, JAMES CAREY, VERONIKA DZIKOVIC and

DEREK ROBERTO, by their attorneys Lovett & Gould, LLP, for their complaint

respectfully state:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately the

result of conduct jointly engaged in by the Defendants while acting under color of the

laws of the State of New York, for violations of Plaintiffs' rights as guaranteed by the

First Amendment to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiffs VIOLETA DZIKOVIC, HATIXHA ZHERKA, KUJTIM ZHERKA,

JOHN O'NEILL, GABRIEL POTENTE, MADLIN SULEIMAN, LANA MARJI,

KENNETH HESLOP, RANDA SAYEGH, CHANDRA SOOKDEO, JONI

CAMPBELL, YOLANDA COLLAZO, ROBERTO  RODRIGUEZ, GUILLERMO

CORSO, CHEZEKIA CORSO, ARACELIS BATISTA, ALICIA CORZO, MARIO

MARTINEZ, ANGEL FELIZ, Sr., ANGEL FELIZ, Jr., DOMINICK D'INTINO,

ROBERT PALERMO, SAL POTENTE, JAMES CAREY, VERONIKA DZIKOVIC and

DEREK ROBERTO, are citizens of the United States, domiciliaries of the State of New

York, and residents of the City of Yonkers. By reason of Plaintiffs' on-going concerns

about pervasive and systemic corruption in the various municipal corporate subdivisions

within and including the County of Westchester, New York, each has become an avid

reader of The Westchester Guardian (hereinafter the "Guardian"), a weekly newspaper

that focuses on and reports about amongst other things such corruption in the incumbent

administration of the City of Yonkers.

4. Defendant PHILIP AMICONE (hereinafter "Amicone"), who is sued in his

individual and personal capacities only, at all times relevant to this complaint was the

duly elected, incumbent Mayor of the Defendant City.

5. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his

individual and personal capacities only, at all times relevant to this complaint was the

duly appointed, incumbent Police Commissioner for the Defendant City.

6. Defendant JOHN A. LISZEWSKI (hereinafter "Liszewski"), who is sued in his

individual and personal capacities only, at all times relevant to this complaint was the

duly appointed, incumbent Commissioner of Public Works for the Defendant City.

7. Defendant LAWRENCE A. PORCARI, Jr. (hereinafter "Porcari"), who is sued

in his individual and personal capacities only, at all times relevant to this complaint was

employed as a staff attorney in the office of Corporation Counsel for the Defendant City.

8. Defendant CITY OF YONKERS, New York (hereinafter "City"), is a

municipal corporate subdivision of the State of New York, duly existing by reason of and

pursuant to the laws of said State.

9. Defendant PAUL WOOD (hereinafter "Wood"), who is sued in his individual

and personal capacities only, at all times relevant to this complaint was a sworn member

of the City of Yonkers' Police Department.

3

9. Defendants POLICE OFFICERS JOHN DOE'S #1 to #20 and SANITATION WORKERS JOHN ROE'S #1 to #20, each of whom is sued in his/her individual and personal capacities only, are respectively sworn members of the City's Police Department and members of the City's Department of Public Works. Although their identities are presently unknown, their names will be ascertained during discovery at which time Plaintiffs will seek leave of the Court to add their actual names to the complaint.

## THE FACTS

10. On the front page of the Guardian published July 5, 2007, the headline was: "Amicone Sells Out Families of Yonkers. . .Enbraces Giulio Cavallo; Brings in Nick Spano Mob". In that connection:

a. A page "2" article referenced Amicone as a "Man Who Would: Take the endorsement of Nick Spano, a fallen, crooked politician, and create taxpayer-funded jobs for his mob; Bring Giulio Cavallo, a political prostitute who sells cross-endorsements for cash, into the election process; Run on a party line whose chairman, Zehy Jereis, is an election fraudster and a convicted drug dealer", and,

b. A page "4" editorial that, *inter alia*, expressed the following "Opinion": "Such has been the sordid tale of recent elections in Westchester, and particularly in the City of Yonkers. Given that history, we believe that the race for Mayor of Yonkers, pitting incumbent Republican Phil Amicone, and every undesirable political creature he can muster, against Independent Nader Sayegh, and Democrat Dennis Robertson, in a context that will require the utmost attention of the Voters' Rights Division of the Justice

4

Department, and the provision of sufficient observers and enforcement personnel to protect the integrity of the outcome."

11. On the front page of the Guardian published the week of July 9, 2007, the headline read:

"A Tale of Two Cities", beneath which to the left was a photograph of the Mayor of Mount Vernon, New York (Ernie Davis), and beneath which to the right was a photograph of Amicone. The Davis photograph bore the legend: "DUMB". The Amicone photograph bore the legend: "DUMBER" (hereinafter collectively referred to as "DUMB & DUMBER") - - in connection with which readers were invited to "See In Our Opinion, p 4".

12. In the editorial concerning the front page story, captioned "In Our Opinion . . .Sodom and Gomorrah", the Guardian expressed *inter alia* the following thoughts regarding Davis and Amicone:

"We must sadly conclude that Davis and Amicone have each been abject failures, little more than caretakers, at best, not likely to improve the circumstances of the city they have been entrusted with, if placed back into their present positions. In short, we believe Ernie Davis and Phil Amicone have not only squandered vast human and financial resources, but also the wonderful opportunity to bring about significant positive change.

Consider the fact that Mount Vernon and Yonkers are each under Federal Investigation. . .in connection with projects and programs involving huge sums of money. . .There's a distinct odor of fish

5

somehow attached to these financial mysteries.

. . .As regards crime, there is no denying that street crime and
gun violence in both Yonkers and Mount Vernon have been spiraling
out of control under Amicone and Davis respectively. Additionally,
the Yonkers Police Department has had, and continues to have,
a well-deserved reputation for police brutality, a problem neither
Phil Amicone nor Commissioner Hartnett have made any convincing
effort to abate.

     *      *      *

The decay and destruction of formerly strong, proud neighborhoods
and public schools under Davis and Amicone has been the inevitable
product of corrupt, uninspired administrations more concerned with
satisfying and fattenening political powerbrokers and criminal
elements such as Giulio Cavallo, Zehy Jereis, Nicky Spano, Larry
Schwartz, Reggie LaFayette, and their ilk. . .In short, we believe Ernie
and Phil have been marching to the beat of the wrong drummer for
quite some time, and are not likely to alter their cadence anytime soon."

13. Commencing during the week of July 9, 2207, and continuing thereafter,
employees of the Guardian's owner repeatedly sought to distribute inside and/or outside
Yonkers' City Hall:

   a. Copies of DUMB & DUMBER as contained in the Guardian

   b. Copies of the July 26, 2007, Guardian the front page headline of which

reported: "Guardian Publisher Offers $25,000 Reward For Information Leading to the Arrest and Conviction of Westchester Public Officials and Politicians Who Have Broken the Law and Betrayed the Public Trust", and,

    c. Copies of the August 2, 2007, Guardian the front page headline of which read: "Phil Amicone A Huge Flop! Fails to Deal With Police Brutality. Sharpton Correctly Identifies Problem As <u>Not</u> Targeting Only the Minority Community".

14. In that connection pursuant to a coordinated action orchestrated by Amicone, Hartnett, Liszewsky, Porcari, their co-defendants and numerous members of the City's Police and Public Works Departments, all copies of the Guardian were repeatedly confiscated and discarded by Defendants - - hateful conduct motivated in whole or in substantial respect by the substantive content of the Guardian concerning Amicone and the Yonkers Police.

15. Also in that connection and pursuant to the same coordinated action, in excess of fifty Guardian newsracks were confiscated - - many of which were discarded - - by Defendants under the direction of Liszewski, action taken by similarly motivated hateful conduct.

16. As a further consequence of that coordinated action, Defendants repeatedly and daily targeted employees of the Guardian's owner, as indicated *infra*, threatened them with arrest, and charged them criminally - - with the same motivation and the objective of entirely stopping dissemination of the Guardian in and about City Hall and throughout the City because of its substantive content. In that connection and with a view towards intimidating certain of those employees Porcari, pretending to be a sworn member of the Police Department, exhibited to them an apparent police badge and

threatened them with arrest/imprisonment in the event that they did not immediately cease distributing the Guardian.

17. By way of contrast publications favorable to Amicone and the City (such as the ironically named "Yonkers City of Vision") were permitted by the Defendants to be dispensed from *inter alia*:

  a. A newsrack, located on a stairway in City Hall,

  b. A counter at a security desk in City Hall as manned by a uniformed
     Police Officer, and,

  c. Newsracks placed on city-owned property throughout the City.

18. Also by way of contrast, persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals:

  a. In the stairway newsrack referenced *supra*,

  b. On the security desk counter as referenced *supra*, and,

  c. In newsracks situated on public property throughout the City.

19. As a proximate result of Plaintiffs' conduct Wood, Porcari, and Police Officers John Doe's #1 to 20 repeatedly confronted employees, and at least one officer, of the Guardian's publisher and:

  a. Ordered them to cease distributing the Guardian on the supposed premise that its distribution was illegal in Yonkers,

  b. Issued multiple criminal informations charging them with distributing the Guardian,

  b. Ordered them to leave the premises,

8

c. Threatened them with arrest/incarcerate should they return to distribute the Guardian,

d. Falsely advised them that it was illegal to use a camcorder to memorialize their unlawful conduct - - advice that was challenged and ignored, and,

e. Coerced them to depart from the City by intimidation.

21. Under the premises Defendants' conduct has intentionally prevented and/or substantially impaired the dissemination of the Guardian within and throughout the City as a result of which Plaintiffs have been unable to obtain/read the Guardian and learn information, ideas and opinions as provided by that publication regarding on-going corruption in the City's government.

22. As a proximate result Plaintiffs have been caused to suffer: irreparable damage to their rights as guaranteed by the First Amendment; emotional upset; impairment of their otherwise insight into the criminal wrong-doing routinely indulged in by City officials and persons with whom they associate; fear of the secrecy with respect to which Defendants have deliberately enshrouded their misfeasance, malfeasance and corrupt practices; fear of the blatant abuse of power and authority by the Defendants in their suppression and violation of First Amendment rights; dismay and shock at the calculated misuse of public funds wasted by Defendants to support their campaign of terror against the Guardian and its readers; anxiety attributable to the suppression by Defendants of the Guardian and the impairment of Plaintiff's right to knowledge and information; punishment for exercising their right of free speech; and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "22", inclusive.

24. Under the premises Defendants violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding against all Defendants $10,000,000 in compensatory damages or such additional compensatory damages as the jury may determine,

    b.  Awarding against the individually named Defendants $10,000,000 in punitive damages or such additional punitive damages as the jury may impose,

    c.  Permanently enjoining Defendants from interfering with the distribution and/or dissemination of the Guardian within the City and/or City Hall,

    d.  Declaring that Defendants' conduct violated Plaintiffs' rights as guaranteed by the First Amendment,

    e.  Awarding as against all Defendants reasonable attorney's fees and costs, and,

10

    f.   Granting such other and further relief as to the Court seems just and

        proper.

Dated: White Plains, N.Y.
       August 28, 2007

                            LOVETT & GOULD, LLP
                            Attorneys for Plaintiff
                            By:
                            Jonathan Lovett (4854)
                            222 Bloomingdale Road
                            White Plains, N.Y. 10605
                            914/428-8401

# Exhibit B

## ARTICLE XIII, <u>EN</u> Department of Law [Adopted 8-28-1995 as L.L. No. 11-1995<u>EN</u>]

### § C13-1. Department established, Corporation Counsel .

A.      There shall be a Department of Law. The head of the department shall be the **corporation counsel** , a position in the unclassified service, vested with authority, direction and control over said department, with power and authority to appoint and remove officers and employees therein.

B.      The **corporation counsel** may appoint, to hold office at the pleasure of the **Corporation Counsel** , a first deputy, a second deputy, and other subordinates.

### § C13-2. Powers and duties.

A.      The **corporation counsel** shall be and act as the legal adviser of the City of Yonkers and all of its elected and appointed officers, boards, agencies and departments.

B.      The **corporation counsel** shall appear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department, and such officer, board or department shall not employ other counsel.

C.      Except for contracts entered into pursuant to the provisions of the New York State Public Officers Law, the **corporation counsel** may employ counsel, pursuant to a contract approved by the Board of Contract and Supply, to assist in the argument and conduct of important cases or proceedings in which the city or any officer, board or department thereof is interested or a party, or to assist in matters requiring specialized legal skills or experience.

D.      Any city officer or employee entitled to counsel pursuant to Public Officers Law § 18, shall inform the **corporation counsel** of the counsel who will represent the officer or employee. The **corporation counsel** shall forward to the City Council a proposed contract for such counsel and the Mayor shall submit a budget transfer to fund the proposed contract. If approved by the City Council, the **corporation counsel** shall enter into the contract with the officer's or employee's counsel.

### § C13-4.<u>EN</u> Laws superseded.

This article shall supersede Section 201 of the Second Class Cities Law and any other provisions of the Second Class Cities Law, or any special law, local law or ordinance which are inconsistent with the provisions of this article.

## ARTICLE XIV, <u>EN</u> Department of Parks, Recreation and Conservation [Adopted 4-12-1988 as L.L. No. 2-1988; amended 5-24-1988 by L.L. No. 3-1988<u>EN, EN</u>; 8-28-1995 by L.L. No. 11-1995<u>EN</u>]

Part A, Department of Parks, Recreation and Conservation<u>EN</u>

### § C14-1. Department established; Commissioner and Board of Parks, Recreation and Conservation.